## 75119. STACEY v. CALDWELL.
(367 SE2d 73)

SOGNIER, Judge.

Carolyn Caldwell brought suit against Westin Stacey seeking damages for injuries she incurred when the automobile she was driving was struck from behind by Stacey's vehicle. The jury returned a verdict in favor of Caldwell on the issue of liability and awarded her compensatory damages, but found in favor of Stacey during the bifurcated trial on the issue of punitive damages. The trial court denied Stacey's motion for a new trial and this appeal ensued.

1. Appellant contends the trial court erred by admitting testimony that on the day of the accident, appellant was arrested for driving under the influence of alcohol and that appellant refused to be tested for the alcohol content of his blood. As to evidence regarding appellant's arrest, the record reveals that while appellant moved the court to limit this evidence, no ruling was ever made on this motion and no objection was made by appellant to the evidence admitted during trial. Thus, this argument presents nothing to review. *Morris v. Southern Bell &c. Co.*, 180 Ga. App. 145 (1), (2) (348 SE2d 573) (1986).

As to evidence regarding appellant's refusal to submit to blood-alcohol testing, we agree with appellant that his motion to limit this evidence and the trial court's ruling thereon were sufficient to preserve appellant's objection to the admission of this evidence. Thus, we turn to the merits of appellant's argument.

Appellant asserts that evidence of refusal to submit to blood-alcohol testing is inadmissible in civil litigation because the General Assembly, by enacting OCGA § 40-6-392 (c) to provide: "[i]n any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood . . . at the time of his arrest shall be admissible in evidence against him," demands the interpretation that such evidence is inadmissible in civil trials. Appellant argues his interpreta-

tion is further supported by the language in OCGA § 40-6-392 (a) and (b) in which the General Assembly specifically authorized the admission in both criminal and civil proceedings of evidence of blood-alcohol testing, the results of such testing and the presumptions to be drawn from those results. Appellant argues that the specific inclusion of reference to civil proceedings in subsections (a) and (b) of the statute require we interpret subsection (c), in which no reference is made to civil proceedings, as providing that evidence of refusal to submit to testing is inadmissible in civil proceedings. We do not agree.

As noted in *Wessels v. State*, 169 Ga. App. 246, 247-248 (2) (312 SE2d 361) (1983), when the Uniform Traffic Act was adopted by the General Assembly in 1953, the statute addressing blood-alcohol testing, Code Ann. § 68-1625 (b), provided that in any *criminal* prosecution for driving while under the influence of intoxicating liquor, the failure of the arrested person to consent to a test establishing blood-alcohol was inadmissible in evidence in the trial of such person. Ga. L. 1953, Nov.-Dec. Sess., p. 556. The rationale for the inadmissibility of such evidence was based on constitutional concerns regarding a criminal defendant's privilege against self-incrimination, see *Johnson v. State*, 125 Ga. App. 607 (2) (188 SE2d 416) (1972), concerns which would not generally be applicable in civil proceedings. A subsequent restructuring of the Uniform Traffic Act failed to provide for or reference the earlier provision, see *Wessels*, supra at 248, and it was not until 1983 that the General Assembly explicitly authorized the admissibility of evidence of refusal to submit to testing in criminal proceedings in OCGA § 40-6-392 (c). Ga. L. 1983, p. 1000, § 14 (c). (We note that in 1983 the United States Supreme Court discounted the self-incrimination arguments against admitting such evidence. *South Dakota v. Neville*, 459 U. S. 553 (103 SC 916, 74 LE2d 748).) Thus, the history of this statute would seem to indicate that the Legislature's intent in enacting OCGA § 40-6-392 (c) was to rectify an omission in the law by explicitly authorizing the admissibility in criminal trials of the evidence regarding the refusal to submit to blood-alcohol testing.

Although the General Assembly is presumed to know the existing case law on a subject when it enacts a statute, see *Hadley v. Bd. of Trustees &c.*, 171 Ga. App. 614, 617 (320 SE2d 620) (1984), research has failed to reveal any appellate court decisions addressing the status in civil cases of evidence regarding refusal to submit to blood-alcohol testing. The only case law thus affected by the 1983 statute are those opinions excluding such evidence in criminal cases, which must now be deemed overruled to whatever extent *Wessels*, supra, has not done so already. By enacting OCGA § 40-6-392, the General Assembly has also explicitly endorsed the case law stating that evidence of blood-alcohol testing and the result of such testing is admissible in civil proceedings. This result had been reached in earlier case

law under the rationale that "[w]e are cited to no rule of law which would make such tests, authorized in criminal cases under Code Ann. § 68-1625, inadmissible in civil cases." *Russell v. Pitts*, 105 Ga. App. 147, 150 (1) (123 SE2d 708) (1961).

Likewise, if evidence of refusal to submit to blood-alcohol testing is admissible in criminal cases under OCGA § 40-6-392 (c), we see no reason why it should not also be admissible in civil cases, especially since had the blood-alcohol test been taken, the testing as well as the results of that testing would be admissible regardless whether or not the tested person was arrested, charged or convicted of driving under the influence of alcohol. To adopt appellant's interpretation of OCGA § 40-6-392 (c) would lead to an absurd and anomalous result. " 'It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.' [Cit.] 'The construction must square with common sense and sound reasoning.' [Cit.]" *Polston v. Levine*, 171 Ga. App. 893, 894 (1) (321 SE2d 350) (1984). Thus, we declined to adopt appellant's interpretation of OCGA § 40-6-392 (c) and find no reversible error in the admission of this evidence.

2. Appellant next asserts the trial court erred by admitting into evidence and thereafter allowing to go out with the jury Plaintiff's Exhibit #9, a computer report of appellee's electromyographic (EMG) study. Dr. Leslie Kelman, a neurologist, testified as to his qualifications, the manner in which EMGs are performed, the reliability of EMGs and their use as objective locators of nerve damage in patients. Kelman then identified the exhibit as the computer report generated at the time he performed the EMG on appellee and testified that the report was maintained in his records. Medical records containing diagnostic opinions and conclusions " 'cannot, upon proper objection, be admitted into evidence *unless and until* the proper foundation is laid, i.e., the person who entered such diagnostic opinions and conclusions upon the record must qualify as an expert and relate the facts upon which the entry was based.' [Cits.]" (Emphasis supplied.) *Dennis v. Adcock*, 138 Ga. App. 425, 428 (2) (226 SE2d 292) (1976). We find no error in the trial court's admission of the computer report on the basis of this testimony. See also *Reisman v. Martori, Meyer, Hendricks & Victor*, 155 Ga. App. 551, 553-554 (3) (271 SE2d 685) (1980).

Nor do we find any reversible error was committed by the trial court by allowing the computer report to go out with the jury. " ' "The jury should not be permitted to take with them for consideration in the jury room, depositions, dying declarations, confessions or written statements of the defendant, or other instruments of evidence depending for their value on the credibility of the maker." . . . Such written testimony may have an unfair advantage over oral testimony

by speaking to the jury more than once.' [Cits.]" *Miller Distrib. Co. v. Rollins*, 163 Ga. App. 635, 636 (295 SE2d 187) (1982). However, the computer report of appellee's EMG was not being used in lieu of testimony, see *Shedden v. Stiles*, 121 Ga. 637, 639-640 (4) (49 SE 719) (1904), nor was it made with the calculation to influence the fact finder. See *Vinyard v. State*, 177 Ga. App. 188, 191 (338 SE2d 766) (1985). Rather, the computer report consisted of a chart of the test results conducted on appellee, a summary of the muscles which tested as abnormal, and a concluding sentence, entitled "Impression," stating "Abnormal EMG demonstrating chronic lower motor neuron dysfunction in the left L5 distribution with some overlap in the S1 distribution." The computer report contained no information regarding appellee's case history or anything intimating the cause of her abnormal EMG. Even though Kelman stated in his deposition that the report reflected his "interpretation and diagnosis" as to appellee's condition, we find nothing in this report other than documentation of Kelman's EMG testing and do not agree with appellant that the jury's possession of this report during deliberations was reversible error.

3. We find no error in the trial court's charge to the jury, pursuant to *Moore v. Thompson*, 255 Ga. 236 (336 SE2d 749) (1985), instructing the jury that the case would be bifurcated requiring them first to deliberate on the issues of appellant's negligence and the actual damages flowing therefrom. The trial court then charged that "[d]epending on the outcome of your verdict on those issues, you may then be instructed by the court as to whether you may or may not consider the issue of punitive damages." We are not persuaded by appellant's arguments that the jury's deliberations regarding liability were somehow tainted by this charge because the jury may not have "rigidly adhered" to the trial court's instruction. See *Gen. Warranty Corp. &c. v. Cameron-Hogan*, 182 Ga. App. 434, 438 (7) (356 SE2d 83) (1987).

4. Appellant asserts in his final enumeration that he was not allowed a thorough and sifting cross-examination of Officer B. P. Henry in that the trial court restricted his counsel's questions regarding the citation issued by Henry, the accident report Henry filled out and Henry's affidavit. In regard to the citation, appellant fails to mention in his brief that the trial court excluded all references to this document during trial because appellant had not produced the document upon request either during discovery or at a pre-trial conference and appellant was unable to give any reasonable excuse for this lack of production. Excluding reference to this document was, therefore, not error. See *Dept. of Transp. v. Livaditis*, 129 Ga. App. 358, 360 (2) (199 SE2d 573) (1973).

As to the accident report, although the trial court initially indi-

cated the document would have to be admitted into evidence before appellant could cross-examine Henry as to its contents, after a conference held off the record, appellant proceeded to cross-examine Henry as to all salient points in the document. Thus, the record does not support appellant's claim as to the accident report.

Finally, appellant contends he was not allowed a thorough and sifting cross-examination of Henry as to an affidavit signed by the officer. The record reflects, however, that the trial court did not restrict the cross-examination of Henry on this issue but instead made an evidentiary ruling requiring appellant to admit the affidavit into evidence before delving into its contents. We need not address the correctness of this ruling since appellant failed to object to same and it is axiomatic that failure to object in the trial court leaves nothing for this court to review on appeal. See generally *Merry Shipping Co. v. Sparks*, 160 Ga. App. 376, 378 (1) (287 SE2d 92) (1981).

5. Appellee's motion for damages for frivolous appeal pursuant to OCGA § 5-6-6 is denied. See *Harrell v. Thompson*, 182 Ga. App. 470, 473 (6) (356 SE2d 69) (1987).

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 23, 1988 —
REHEARING DENIED MARCH 11, 1988 —

*B. Dean Grindle, Jr., J. Greg Tharp*, for appellant.
*John H. Ridley, Jr., Robert G. Brazier*, for appellee.